# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 23, 2014

## DAVID FREEMAN CLAY v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Knox County
### No. 99042      Bobby R. McGee, Judge

---

### No. E2013-02262-CCA-R3-PC-FILED-OCTOBER 3, 2014

---

Petitioner, David Freeman Clay, appeals from the trial court's denial of his petition for post-conviction relief following an evidentiary hearing. Petitioner sought post-conviction relief from his convictions of two counts of sexual battery and three counts of assault, based upon his assertions that his trial counsel rendered ineffective assistance of counsel at trial and on appeal. In his appeal Petitioner asserts that the trial court erred by ruling that trial counsel did not provide ineffective assistance of counsel. After a thorough review we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, David Freeman Clay.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Philip Morton, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

Petitioner was originally tried in a jury trial on ten counts of aggravated rape and one count of especially aggravated kidnapping involving the August 2005 sexual assault of the victim. As noted above, the jury found Petitioner guilty of the lesser included offenses of two counts of sexual battery, a Class E felony, and three counts of Class B misdemeanor assault. Petitioner was acquitted of all other charges. On appeal, this court affirmed the convictions and the total effective sentence of nine years and six months to serve in the

Department of Correction. *State v. David Freeman Clay*, No. E2009-00868-CCA-R3-CD, 2010 WL 3597219 (Tenn. Crim. App. Sept. 16, 2010). As relevant to the present appeal this Court summarized the facts in part as follows:

> Rocky Rogers testified that during the late morning of August 5, he was cutting hair at his Knoxville barber shop when he looked up to see "a lady walking towards the building naked." He met her at the front door to tell her she could not come inside because there were children in the shop. She told him that "she was tied up and had been kidnapped and raped." However, Mr. Rogers said that there was not a rope around the woman's neck. He told the woman to go to the store next door and that he would call the police to meet her there. He tried to give her a coat to wear, but she had already left. Mr. Rogers also stated that there was a car wash a few doors down from his barber shop.
>
> Knoxville Police Department (KPD) Patrol Officer Keith Lyon testified that on August 5 when his shift ended he took his patrol car to a car wash where an employee brought a woman to him who claimed she had been raped. Officer Lyon said that the woman had a t-shirt and towel "to put around her." Officer Lyon said that there was not a rope around the woman's neck. He said that the woman "appeared to be very traumatized and scared to death." The woman told Officer Lyon that she had been raped at a house about two doors from the car wash. He called for an ambulance and an on-duty officer. Officer Lem Clemons arrived to complete the investigation.
>
> The victim, [D.R.], testified that she was living in Walter P. Taylor Homes, "the projects," on August 5, 2005. She said that she walked to a nearby convenience store at around 10:00 p.m. to buy a beer. She was wearing jeans, clogs, and a blouse and was carrying a small change purse. As she was walking to the store, she saw "a black guy" walking towards her. As their paths met, the man said hello to her, grabbed her by the neck, and pulled her with him. The victim testified that the man put something around her neck that "felt like a shoe string" and pulled her into an abandoned house. She said that she tried to run, but the man was choking her. She said he stuffed something like "a bandana" in her mouth once they got inside the house. The victim said that as she struggled, the man told her "do you want me to kill you like I killed that last bitch." The man next instructed the victim to take off her clothes and "to walk up those nine steps and if you do what I say then I might let you live." The victim said that she

-2-

could not remember whether she took her clothes off or the man did because she "kept blacking out and coming to" from the choking.

The victim testified that she next remembered being "hogtied" with a rope around her neck and her hands tied behind her back and attached to her legs. She said that she was laying on a dirty mattress on the floor with a sleeping bag nearby. She described the room as filthy with pornographic magazines and Milky Way wrappers all over the floor.

The victim testified that the man then began to rape her. He penetrated her anally with his penis for about an hour. She described it as "horrible" and "very painful." She said that he talked "obscene" during each act and told her that she deserved what he was doing to her. He made the victim move into different positions and wanted her to "say obscene things to him." She said that the man had a pocket-knife and used it to penetrate her anally once. The victim said that the man "licked [her] . . . . used his penis in me, his hands, everything" both anally and vaginally. The victim said that the man forced her to perform oral sex on him also. The victim estimated that the man penetrated her "ten to twenty" times. She said that she acted like she enjoyed the rapes because when she did, the man did not hurt her so bad.

The victim testified that throughout the ordeal she "was just trying to think of how I was going to live through it. I didn't think I would live through it." The man told her not to try to escape to the next house because "he s[old] drugs for the people next door and they [would] kill [her]." She said that she finally gained his confidence so he untied her so that she could urinate. She said that he told her to urinate in a corner of the room and that each time she did, he would urinate in the same spot. The victim stated that the man eventually fell asleep. She said she was afraid to move initially, but when she realized that he really was asleep, she "got up and . . . ran." She said that the man woke up and tried to pull her back into the room to give her her clothes, but she jumped from the balcony and landed in the grass. She said that she ran "[b]arefooted and naked" to the barber shop. The man at the barber shop told her to go to the convenience store next door for help because there were kids in his shop. The victim said that she ran to the store where a man in the parking lot gave her a "big t-shirt" from his car and told her she could find a police officer at the car wash.

From the car wash, the victim went to the hospital in an ambulance. She said she was afraid that the man was following her the entire time. She described the rape kit examination as "very painful." In the courtroom, the victim identified the Defendant as the man who had assaulted her. She said that she had never met him before these offenses occurred.

On cross-examination, the victim admitted that she had consumed "a forty" before the Defendant assaulted her, but she said that she was sober throughout the incident. She acknowledged that she may have said hello to the Defendant when he approached her on the street that night. She also admitted that the arrest warrant contained no information about the Defendant putting a rope or shoe string around her neck; but, on redirect examination, she stated that there was not enough room on the warrant to include everything that happened to her that night. The victim said that Ray Cantrell was her neighbor at Walter P. Taylor Homes.

* * *

The fifty-three year old Defendant testified that he is divorced with two adult children. He said that he had a successful life as a computer programmer before he became addicted to cocaine following his divorce in 1985. His addiction led to a conviction for drug possession and sale of cocaine which caused the loss of his job at IBM.

Concerning the offenses, he testified that he and the victim went to the abandoned house to smoke crack cocaine that they had purchased from Mr. Cantrell. The Defendant indicated that he and the victim had a conversation about "what she wanted to get offered [in exchange] for some crack." The Defendant said that they agreed to go to the abandoned house. He contended that it would have been impossible for the victim to have walked through the house naked "without getting scratched or cut up." He said they went to the upstairs room where they drank vodka and smoked an "eight ball" of crack cocaine. He said that they discussed the sexual things she would do in exchange for the cocaine. He described the encounter as "almost like a business arrangement." He explained that cocaine "gives you an illusion that you can do more than you can" but that he was unable to maintain an erection due to the alcohol and cocaine. He said that the victim was "sexually aroused" and "was trying to get [him] to do things he couldn't do" - leading to the variety of sexual acts that occurred, including bondage. The Defendant said that the victim asked him to place a string

-4-

around her neck and pull it while he performed oral sex on her. He testified that he was unable to penetrate her with his penis. He denied that he gagged the victim with a sock or bandana or that he "hogtied" her. He said that any sexual activity was "agreed upon . . . I paid for what I wanted, or she agreed on it."

The Defendant said that he fell asleep at around 6:00 in the morning. He awoke to a noise and discovered $340 dollars missing from his pants. He found the victim on the porch with his money in one hand and her clothes in the other. They struggled on the porch for some time before the Defendant, realizing that it would not look good to be seen struggling with a naked woman on the porch, took the victim's clothes from her and told her she would get her clothes back when she handed him his money. The Defendant decided that the victim was not going to give him his money so he went inside to finish getting dressed. He planned to confront the victim on her way out of the house, but when he returned to the porch, the victim was gone with his money. The Defendant went back to work about two blocks away. He testified that he was embarrassed by the events of the night.

*David Freeman Clay*, 2010 WL 3597219 at *1-2.

In the present appeal, Petitioner asserts that the evidence at the post-conviction hearing showed that his trial counsel rendered ineffective assistance of counsel in three ways:

(1) Trial counsel failed to argue for the admissibility of Petitioner's testimony that the victim was a prostitute.

(2) Trial counsel failed to raise as an issue in the direct appeal of his convictions that the trial court erred by ruling that Petitioner's prior conviction for aggravated assault could be used for impeachment of Petitioner's trial testimony.

(3) Trial counsel rendered ineffective assistance of counsel by requesting the trial court to charge the jury with the lesser included offense of sexual battery, as a lesser included offense of the indicted offenses of aggravated rape.

The trial court made its ruling from the bench in this case at the conclusion of the post-conviction hearing. As to Petitioner's issues, the trial court made the following findings of fact and conclusions of law:

> The Court notes also that there's no - - there was no presentation at trial, at least I don't believe so, and there's been no presentation today that there was any actual proof that the victim was a prostitute. There's certainly no evidence that the victim - - that [Petitioner] had hired her for sex before and paid her. There's been no testimony offered that he knew firsthand, observed her, you know, firsthand taking money and performing sex.

> And so it would not appear to be - - even had it been preserved on appeal there's no strong argument made here that the appellate court would've come anywhere near reversing a conviction because of the judge's ruling on the admissibility of that word ["prostitute"].

> [Petitioner] also claims that it was very serious error for the trial counsel to allow the [aggravated] assault to be used for impeachment purposes when he testified. The Court would note that apparently a Rule 609 hearing was held, the judge heard both sides, and the judge made the determination that would come in.

> It's difficult to fault the attorney for that, and since it is the judge's duty and job to determine the admissibility of those things, it's hard to say how that could've been - - how it can be argued now that the trial counsel was deficient for failing to appeal it. There's no evidence here that - - the only evidence here on the issue is the same evidence we always have when we do a 609, it's an argument, should it come in, should it not come in.

> There's - - it appears that the defense - - part of the defense strategy is going to be that [Petitioner] would testify. And, of course, that was very important where there's the only two people who are witnesses to the alleged crime are the victim and the defendant, the accused. There's, of course, an obvious need for the accused to give his account of what happened. And so the attorney apparently, some fairly skillfully, used the fact that [Petitioner] had an extensive record to try to bolster his credibility.

> He brought it out on direct examination, and he tried to create the argument and the impression that this defendant was open and would admit

-6-

to the things he was guilty of and should, therefore, be believed when he said he didn't commit the acts for which he was on trial.

And the Court would also find that it's not entirely clear that the aggravated assault would not be admissible on the issue of credibility

* * *

And, again, there's very little lucid argument here that this would clearly have been a basis for which the Court of Criminal Appeals would reverse the case.

* * *

And third, the issue involving the lesser included offense, the sexual battery . . . we now have to find that any lesser included that we charge is supported by the facts.

Well, if you look at the sexual battery statute, and look at the evidence in this case certainly - - certainly those - - sexual battery was supported by the evidence. A great deal more was supported by her testimony, but certainly this particular lesser included was raised by the evidence, and very likely a judge would have a duty now to charge it even if the defendant didn't ask for it, because we're back to the point where the judge once again has to make the determination of if it's fairly raised by evidence the charge has to be complete. And there's good argument that it's not complete unless relevant lesser includeds are charged.

* * *

This Court finds as a matter of fact that counsel's performance was not deficient involving matters of decisions, and choices, and tactics, and strategies that are the work of lawyers, these decisions have to be made. They're not to be reviewed through the clear vision of 20/20 hindsight. They must be viewed within the context of the case as it appeared at the time.

This Court finds that this trial attorney's performance was not deficient. And having made that determination there is no need to go further to deal with the issue of prejudice.

-7-

For those reasons the petition for post conviction relief is respectfully denied.

We will summarize the testimony presented at the post-conviction hearing which pertains to the issues raised by Petitioner in this appeal. Petitioner testified that he "knew [the victim] was a prostitute" who "got high off crack." He testified that the judge at his trial ruled that Petitioner's proposed testimony that the victim was a prostitute would not be admissible. Petitioner acknowledged that he had never had sex with the victim prior to the night of the incidents which led to his convictions. Petitioner testified that on four or five previous occasions he had seen the victim at the "crack house" and observed her "exchange favors [sex]" for crack cocaine.

On cross-examination, Petitioner acknowledged that he was permitted to testify at the trial that the victim was inside a "crack house" and that Petitioner gave crack cocaine to the victim in exchange for consensual sex with the victim. Petitioner testified that he was prejudiced by the trial court's ruling because if he could have told the jury that the victim was a prostitute, it would have rebutted the State's expert witness's testimony that the victim had vaginal tears which corroborated rape. Petitioner reasoned that if he had been allowed to testify as he had desired, the proof of the victim's status as a prostitute would have assisted his defense. Specifically, Petitioner testified at the post-conviction hearing,

> I had stated *I didn't have any penetration*, therefore, to explain the penetration we had to explain to the jury that she was a prostitute. That was the only explanation.

(emphasis added)

Petitioner acknowledged that he knew prior to trial that the State would impeach his testimony at trial by submitting proof of his prior convictions. Petitioner testified that trial counsel should not have asked the trial judge to charge the jury that sexual battery was a lesser included offense of aggravated rape. However, Petitioner admitted that he had testified at trial that he had used his tongue to have sexual contact with the victim and that his conduct could constitute sexual battery. Petitioner then testified during cross-examination that he had nothing else to complain about as to trial counsel's representation.

As to Petitioner's issue that trial counsel failed to adequately assert that Petitioner should have been allowed to testify that the victim was a prostitute, trial counsel testified upon direct examination by the State as follows:

Q. Now, [Petitioner] first complains about the evidence being tendered, or not tendered, however it was at trial, about the victim being an alleged prostitute. Tell the Court about your approach to that issue and how you handled it at trial.

A. Well, I guess my position was whether we called her a prostitute or not if we were able to convince the jury that she met [Petitioner] at a crack house and observed him purchasing crack cocaine and left with him that that would indicate it would be a consensual encounter because initially her allegation was that she was just walking down the street and he had thrown a noose or a rope around her neck and had choked her and drug her back to his particular house.

However, we had a witness who testified who was the - - for the lack of a better word - - operator of this crack house who witnessed [Petitioner] purchasing these drugs and her essentially falling over him trying to leave with him to consume the cocaine.

And it was - -

Q. And I take it through your investigation there was no actual witness that could be found that would come in and say that this lady traded sex for cocaine? That actually observed that activity other than just - -

A. No. Other than [Petitioner's] statement to that. But the - - I think Mr. Cantrell who testified indicated that she kind of hung around for that very purpose as well to watch for men who were purchasing crack cocaine.

* * *

Q. Well, [Petitioner] I guess, specifically complains about that you didn't appeal that issue when the judge cut off, I guess, questioning in that area, why did you not do that?

-9-

A.    Well, it was my belief based on the verdict that we got that the jury reached a conclusion that was consistent with the belief that she was trading sexual favors for crack cocaine.

Trial counsel further testified that Petitioner's intention from the beginning was to testify in his own defense. Trial counsel knew that he would have to "deal with" Petitioner's significant number of prior convictions that could be used for impeachment purposes. Trial counsel's strategy was to tell the jury that Petitioner has previously pleaded guilty when he was guilty, but he went to trial in this case because he was innocent. As to his request to the trial court to charge the jury with the lesser included offenses of sexual battery, trial counsel testified that it was his understanding at the time of the trial that sexual battery was a lesser included offense of aggravated rape and that *failure* to request the court to charge sexual battery as a lesser included offense might constitute ineffective assistance of counsel.

During cross-examination by Petitioner's post-conviction counsel, trial counsel acknowledged that Petitioner's defense to the charges "all along" was that there was consent "for everything that happened" and not that there was a lack of penetration during the sexual encounters.

**ANALYSIS**

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. *Id*. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *See Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Id*. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S.

668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Applying the law to the facts in this case it is clear that the trial court did not err by denying post-conviction relief to the Petitioner. The trial court ruled that Petitioner failed to prove that trial counsel rendered deficient performance. The trial court did not address whether Petitioner was prejudiced by any alleged deficient representation by trial counsel. However, since a petitioner in post-conviction proceedings must prove *both* deficient performance by trial counsel and prejudice, failure to establish either one mandates that post-conviction relief cannot be granted. *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013).

Petitioner failed to prove at the post-conviction hearing that trial counsel rendered deficient performance either at trial or on appeal in any of the three ways asserted by Petitioner. As to trial counsel's representation in the appeal of the convictions, Petitioner has not set forth any appellate argument, with citations to the direct appeal record and to legal authority, that he claims trial counsel should have presented on appeal. Mere assertions to the effect that counsel on appeal should have done a better job are not sufficient to show deficient performance. The trial court implicitly discredited Petitioner's post-conviction testimony that the victim was a prostitute. Anyway, at the trial, trial counsel developed proof that the victim exchanged consensual sex with Petitioner for some of Petitioner's crack cocaine. Trial counsel had a legitimate strategy to use as to Petitioner's prior convictions which would be admitted into evidence for impeachment. Furthermore, even if it was error

by the trial court to allow the aggravated assault conviction to be used, it appears from the record a hearing was held and the trial court ruled against Petitioner. The issue was not ignored or overlooked by trial counsel. Finally, regarding counsel's request for the court to charge the jury with the lesser-included offense of sexual battery, Petitioner's testimony at the post-conviction hearing, quoted above, shows that Petitioner wanted the "prostitute" testimony admitted at trial to corroborate his statement that "I didn't have any penetration." Thus, it is abundantly clear that sexual battery, which requires no penetration to be committed, was an appropriate lesser included offense to be charged in this case whether or not it was requested by trial counsel. *See State v. Bowles*, 52 S.W.3d 69, 77 (Tenn. 2001).

Accordingly, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE